Our first case this morning is Rodriguez v. Department of Justice. Mr. Berger? Yes, Your Honor. Thank you. This case comes before this Court as a removal proceeding after a Board decision. At the very heart of the removal penalty, there are two separate findings by the Board. One was the sustaining the unnecessary display of a weapon charge, which reversed the lower presiding judge. And the second was the lack of candor charge. The significance of those findings to this removal penalty really are twofold. Because first, the Board indulges in an extensive analysis of both of those charges in reversing the lower judge. And I would argue that it's not mere surplusage to spend so much time arguing in favor of those two charges. And ultimately, the Board concluded that as a result of sustaining those two charges, the removal penalty was reasonable. Do you agree that the deciding official was pretty clear that based on the professional misconduct charge, which you're not arguing about, and the lack of candor charge, that he would have removed Rodriguez? Certainly based on a lack of candor charge. The combination. Yes, certainly the off-duty, the answer is yes. But as the administrative judge found, the deciding official conferred with Mr. Rodriguez's local supervisor, who expressed that he had no confidence in Rodriguez because he unnecessarily displayed a weapon off-duty. And the problem is that if in fact that was not the case, then that factor should not be considered materially in deciding a penalty. Because his potential for rehabilitation then is, as we know in the so-called Douglas factors, looms much more importantly. And it was because the manager considered the unnecessary display of a weapon to be so important that he felt his potential for rehabilitation was not there. So if that is removed, then I believe the board should reassess this penalty based on the fact that they were in error in sustaining that charge. This set of facts shows kind of an escalating series of events that gets out of control. A problem with his girlfriend that leads to a problem with another motorist. Isn't this the sort of circumstance where we wouldn't reside an awful lot of trust in this officer's ability to de-escalate emotions rather than to contribute to their escalation? Well, I would agree that he committed a provocative act by slamming the gentleman's vehicle. The mirror comes off? And the mirror comes off. But the record does not support the removal based on those provocative acts. The board placed great emphasis on deciding official's discussion with Rodriguez's manager. And the only fact that Rodriguez's manager mentioned was the display of the weapon. There was no further discussion of any other factors. That's all that appears in the record. All that we're doing here now is speculating as to what's important and what's not. But the fact finding suggests that the only relevant factor was the display of the weapon with respect to that second charge. Now, whether appropriate trust should be placed in an officer who doesn't diffuse a situation, I believe is a different case. But it's not here. Because it's not clear that a penalty of removal would have been imposed merely because of his provocative act. But isn't that essentially what the board said, that he didn't diffuse the situation and this ended up in a situation where he drew his gun? Okay. There's a series of events that, at least as I read the board's decision, that merely because he provoked somebody to violence, that he therefore is barred from defending himself. That is not the law. Yes, he was provocative. His words could have been provocative. His actions could have been provocative. But at the time that he displayed his weapon, he was not posing any threat to the retaliator. And so the issue becomes whether... Wait a minute. Excuse me? You're saying that when he displayed a weapon, leave aside pointing it, when he displayed a weapon that it didn't constitute any threat to the person who was approaching him? No, no, no. When he displayed the weapon, Mr. Rodriguez posed no threat. That is, prior to displaying the weapon, he posed no threat to the retaliator. You're saying he was retreating. He was backing up, keeping space between him. The retaliator admitted that his intent was to puddle him with his fists and to hit him. Now, whether that use of force... That use of force has not been shown to be justified based on the previous provocative act. So now he escalates it, I agree, to a point where he's threatening physical violence to Mr. Rodriguez. Now the issue is whether in that split second that Mr. Rodriguez has to assess his situation, when he's not posing a threat to this retaliator, whether he can display his weapon, point his weapon for a short period of time in order to defend himself. But it's an unnecessary display, right? It's unnecessary. So the issue is whether his display of the weapon or his pointing of the weapon was necessary. You're saying he pointed the weapon at the... Yes, he admitted to pointing the weapon very briefly at the gentleman, and then when the gentleman stopped, the facts would show that he put the weapon back. He didn't hold it out for any lengthy period of time. But he was asked whether he pointed it and he denied it. No, what the record shows... That's the cannery term. Right, what the record shows is that the officer asks him, did you draw the weapon? I don't believe that's true. Right, well, let's take... I think the officer asked him whether he pointed it. Right, but the charge is, the charge was that the officer asks whether he drew the weapon. The judge ruled that that question was never asked. So the officer asks, in fact, at the hearing, admits he asks, did you point the weapon? Mr. Rodriguez says, yes. But he doesn't say, and in addition to that, I drew the weapon. He says he did answer truthfully that he pointed his weapon. But unnecessary use of the firearm is itself enough evidence by the record, right? Yes. And is that established by the record sufficiently, do you think, to support this? No, no. It seems to me what you're trying to do is to slice and dice this so that the question becomes, well, at the very moment that he drew the weapon was he testified in drawing the weapon and you say yes. But it seems to me that this has to be viewed against the background of what happened before and that basically what the board said, and perhaps it could have written the opinion better, was that this was unjustified and unnecessary because of what happened earlier and what he created was a pleasant situation and that represented bad judgment on his part and he should be removed from it. I agree, but the charge is not styled in that fashion. The agency itself actually spliced and diced it by separating the charges and making a separate charge of this unnecessary display of a weapon. Yes, but I don't think that the charge necessarily said, we're going to ask whether it was unnecessary to draw the weapon at the very moment that it was drawn, but rather to look at the earlier mention of whether he was responsible for this unnecessary situation. Except that, is the law truly going to judge Mr. Rodriguez on certain provocative acts where he didn't intend any violence to anybody and then it provokes an extreme reaction from some retaliator and it's Mr. Rodriguez to stand mute and not defend himself in a situation like that. I see it as a narrow issue, a very narrowly drawn issue, not a broad issue, Your Honor, and the narrow issue is whether his actual act in displaying that weapon was justified or not. In that compressed period of time when he perceived an assault was imminent, whether that was justified and that's a very narrowly drawn claim and our position is that it certainly was, that the board applied the wrong standard. This so-called free from fault standard, which I think that we're discussing here, is well, what does it mean to be free from fault? Does it mean that, well, because he was provocative earlier on, that he's not free from fault and he's not free to defend himself? Or does free from fault mean simply that he's not posing a threat of violence to a retaliator? That's what it means. Could he have simply withdrawn and made this problem go away? He was, according to the testimony, he was walking away. After a knock on the mirror. Right, and he was walking away and he was withdrawing and then the gentleman comes out, resolves to punch and pummel him and our guy, he gets our guy's attention and he's walking backwards trying to keep his distance and that's when he displayed the weapon briefly in order to brandish the weapon, in order to stop that threat. That's exactly what happened. And you're saying he pointed the weapon at him? He admitted that he did point it because he told the truth when he answered the officer. The lack of candor charge appears to be rooted in, lack of candor and false statement are completely different. This court has made that distinction over and over again, but we understand that lack of candor is developed in the context of fiduciary relationships, employer-employee relationships, trust relationships, where there is a philosophy of full disclosure. But if you're on a street in an arm's length dialogue with a local police officer conducting a criminal investigation, that rule doesn't apply. So the board, when the board found that he didn't falsely answer the police officer's question about whether he pointed his gun at Mr. Mamaris. Correct. But I thought that finding was because he didn't point it, that he said no and he didn't point it, that he drew it. Is that not correct? Yes, that's correct. So you're telling me he pointed it. Well, the evidence does not support, the evidence, there's nothing in this record indicating that he pointed the weapon. You just told me he did, repeatedly. I understand. Which is it? When he was asked the question directly, did you point the weapon? He said no. No, the record here establishes that he was telling the truth when he said no. Excuse me, but did you just tell me twice that he pointed it? Yes, I understand. But the record establishes that he said no. Okay. Thank you, Mr. Berger. Okay, thank you. Good morning, Your Honor. May I please report? We agree he said no when asked, did you point your weapon? He said no. The question with that, with respect to that charge, the administrative judge focused on what he was at. And you agree that he did not point the weapon at Mr. Momera? We don't agree with that. He went through a rotation in the analysis. He testified that he pulled the gun out, pointed it, he drew it past the individual, and they perceived it as the gun pointing at them. Could have perceived. Could have perceived. The witnesses testified that they perceived the gun being pointed at them. He said he didn't point it at them. The administrative judge focused on what question he was asked. Was he asked, did you point it? Was he asked, did you draw it? And the administrative judge concluded he was asked, did you point the gun? And then the administrative judge, inexplicably to us, from that reached a conclusion that he wasn't misleading. But his answer when he was asked, did you point the gun, was I didn't draw my weapon. This is at page 39 of the appendix. The appendix attached to the petitioner's brief. This is in the administrative judge's opinion. He's reciting the testimony of Officer Theodorolios. Which is then challenged. No, Your Honor. This is not challenged. This is in the administrative judge's decision. No, but in the testimony. The testimony itself is challenged in the cross-examination. And the officer says, well, could have been a different question. The officer said it could have been a different question, but he didn't say anything about what the answer was. So the officer, and this is where the officer is saying, admitting, I'm not sure exactly what I asked him. I may have said, did you point the weapon? But the officer then said, and this is in cross, this is actually in questioning by the judge himself, that the officer said, that he said, I never drew my weapon. So it doesn't make a lot of sense to us. The administrative judge, after reaching the conclusion that he was only asked, did you point the weapon, the administrative judge also said, therefore the agency hasn't showed that he denied drawing his weapon, because the denial is still there. He was asked, did you point your weapon, and he said, no, I didn't draw my weapon. Yeah, I don't get that out of this. But separate from that finding, even if he didn't use those exact words, there's no question that what he said was no. He was asked a question, did you point your weapon, he says no. And the board didn't get into the morass of this, and the board concluded, it doesn't matter exactly what he was asked. What he answered was very misleading. But it's to the lack of candor, George. Yes, sir. This is to the lack of candor, George. Now, for a police officer, there are a lot of state laws, right, about pointing firearms at people. Yes, sir. And there's a huge difference between pointing a firearm, which is a felony in a lot of places, and drawing or displaying or brandishing a firearm, which is either a misdemeanor or not a crime in a lot of places. Yes, sir. So it's not unreasonable for a police officer to draw a distinction in her or his mind between pointing a weapon at someone and drawing one. Absolutely not, Your Honor. But the police officer here testified that he understood Mr. Rodriguez's answer to be suggesting that he never drew his gun. So it was misleading because Mr. Rodriguez is saying no to the question. It's not what the questioning officer thinks. Lack of candor is what the answering officer thinks, isn't it? Yes. And if the answering officer can reasonably believe when asked, are you pointing a firearm at someone, that he's really being asked, did you commit the felony of pointing a firearm at someone, that it's reasonable to say no. If he's using cop talk. And in cop talk, when somebody says, when a police officer asks, did you draw your weapon, or even did you point your weapon, the appropriate thing to say would be to say, as the board found here, I drew my weapon, but I didn't point it. That would be a full answer to the question. That would give the cop the answer he needs. Sure, it would be full. But it's a candor chart. And if that, keep in mind, which I'm keeping in mind throughout this, Mr. Rodriguez is inebriated. He's had a few drinks at the pool, at the preparation for the pool party or whatever, the shooting pool. There's no indication of that in the record. I sure get that flavor from him. I think there's nothing in the record indicating. He was driving, in fact, Your Honor. I know he was. Okay. I don't think there's anything in the record suggesting that he had been drinking or that that played a part in what was going on. What I understand you to be saying is that, quite apart from whether he could properly, in response to a question, did you point your weapon, not mention drawing it, but apparently, and I guess this is on the testimony that's quoted on page 39 of the appendix, apparently he said, I did not draw my weapon. In other words, did you point it? He said, I did not draw it. So these distinctions, if there are any distinctions between pointing and drawing, seem kind of irrelevant. If the answer was, I didn't draw it. That's true, Your Honor. There's also testimony on page A29, Sergeant Chesler, who was then called in after the fact. So there were the two officers who were there in the first place who questioned him, and they both said that he testified. He never drew his weapon. And then, because they thought that he was saying he didn't draw his weapon, and they didn't know whether there was any basis to charge him, they brought in a sergeant, Sergeant Chesler. And Sergeant Chesler questioned Mr. Rodriguez. She asked him, did you draw your weapon? And he claimed he never drew his weapon. This is in the footnote 12 on page A29. So all the officers are testifying that he said he never drew his weapon. Again, inexplicably to us, the administrative judge reached the conclusion without explanation that the agency hadn't shown that he said, I never drew my weapon. And there's no explanation for the administrative judge's finding in that regard. The full board looked at this and said, I don't care what he said. What he did was say, no. He was asked questions by the officer, and he said no, and that was misleading because he didn't give them the full answer they needed. And he knew it was misleading because they needed to call in another sergeant, and they needed to go. Then, after the sergeant came, they went to third-party witnesses and asked them whether he had drawn his weapon because they still didn't know the answer. Did Rodriguez testify about this? I'm sorry? Did Rodriguez himself testify about this? Yes, Your Honor. What did he say his response was? He said that he was asked, did you point your weapon? And he said no. Did he contradict the officer's statement that he said he didn't draw his weapon? Yeah, he told them that he testified that he said repeatedly that he had drawn his weapon, that he did draw his weapon, that he told the officers that night that he had drawn his weapon. So there was a dispute of fact of what he said. Did he say that I didn't draw my weapon? The officer said he said that he didn't draw his weapon. He said he didn't, and neither the administrative judge nor the board addressed that factual discrepancy. Entirely separate from this lack of candor charge that we've been discussing is the charge that he inappropriately displayed his weapon. And the board's conclusion rests on the, we think, unobjectionable proposition that if you start a fight, the agency can charge you with pulling your weapon during that fight, and that you can't claim self-defense if you start a fight. And that's really what he's saying here and what he relied on on the board. He said it was self-defense, and we heard an explanation of that today, that at that moment when he pulled the gun, this is their argument, at the moment that he pulled his gun, he needed to pull his gun because he was about to get beat up. And the board law is, if you start the fight, you can't then come in later and say, well, it was self-defense at the moment I pulled the weapon. You have to look to what happened earlier. Yes, Your Honor. You have to look to the whole circumstances. And that's what he was charged with here, the whole circumstances. Was what he did improper when he pulled his weapon? And the answer is yes. Entirely separate. Is it fair to say that it is distinguishable from criminal law in this aspect? Absolutely, Your Honor. In criminal law, a defense of self-defense may very well be appropriate. That's entirely separate from whether the agency can fire somebody. If we take his argument to its logical conclusion, whenever employees get in fights, the agency can't remove anybody because everybody can say, oh, it was all self-defense. It was a brawl and I'm defending myself. I mean, it was a brawl I started. A brawl I started. Exactly, Your Honor. And I was defending myself after starting the brawl. But in fact, when two employees get in a fight, more often than not, the agency removes both of them. And if Mr. Mamaris, and continuously throughout this, Mr. Mamaris is the driver who had the gun pulled on him. If Mr. Mamaris was wrong, if he had been an employee, he probably would have been removed too. But that's not the question here. We're not dealing with criminal liability. We're only dealing with what Mr. Rodriguez did and whether the agency could remove him for that. Entirely separate from the lack of hand or charge or whether he inappropriately drew his weapon. The first point in our brief, and the one I'd like to stress, is that the board was correct nonetheless that based on the two charges that were affirmed, it was appropriate for him to be removed. Mr. Rodriguez says in his brief that the only factor identified in the record, and I'm quoting from page two of his reply brief, he says, this was the only factor identified in the record which materially affected the manager's assessment of Mr. Rodriguez's potential for rehabilitation. He's talking about the drawing of the weapon. He's saying potential rehabilitation was only related to the drawing of the weapon. But in fact, this is page SA3 in our brief, when asked about potential for rehabilitation, the deciding official said, when asked why he showed no potential for rehabilitation, the continued disregard to remove the video flowing down from the site. That's the first thing he talked about. And the video charge is important and it's not discussed much in the brief because it was conceded that he did it. What happened is there was an entirely different incident in a courtroom where somebody went and attacked an assistant U.S. attorney and it was caught on video. And he was accidentally sent this video. And then he was sent an email saying, if you got this in error, please delete it. He deleted it from his Outlook account but he posted it on YouTube and LearnLink or I forget the name of the other website. And he posted it after he received the email that said, you need to remove this. Three minutes later, in fact. And the deciding official said this was why he showed no potential for rehabilitation. Not only did we have this traffic incident that he allowed to escalate showing very poor judgment, but he also showed poor judgment in posting this video which caused a problem between the U.S. Attorney's Office and the U.S. Marshal Office. And he did it willfully. And that's part of the charge and it's conceded. So it's not just this traffic incident. It's both incidents together. And based on those two together, the board concluded that the agency would have removed it. Before your time runs out, I want you to discuss the waiver argument too. Yes, sir. Well, he didn't. This argument I was just discussing, he hasn't addressed it in his opening break. This was also brought before the board in a petition for review. The agency said, addressed the lack of counter charges, addressed the gun charge, and also said, based on the two charges that the administrative judge affirmed, the full board would be asked to affirm the removal. And before the board, he didn't respond. He didn't address that. He only addressed the two charges that he addressed in his opening brief here. And this court made clear that any issue not raised in the opening brief is waived. So we would argue that that issue is waived in its entirety in the first place. Even if it's not waived, as I was just discussing, there's substantial evidence supporting that determination. Because the deciding official specifically said he had no potential rehabilitation. And that was based in part on the video. And it was also based on this off-duty misconduct, which escalated. So for any of these three reasons, I'm sorry, four reasons, the waiver, substantial evidence, support of the removal based on those two charges, whether he showed a lack of candor or inappropriately displayed his weapon, any of those four reasons, this court should affirm the decision of the board. And we respectfully request that the board do so. Thank you, Mr. Bidman. Very quickly, the video. How do we get past that point that the professional responsibility and the off-duty misconduct alone would be enough to sustain the charge and those really aren't before us? I believe they are. The video charge itself, according to the deciding official, would not be a basis for removal when he so testified in and of itself. The professional responsibility, the off-duty matter, is the penalty attached to that matter is rooted in the unnecessary display of the weapon. Because according to the deciding official, again, he spoke to the supervisor, that's what the supervisor raised as an aggravating factor. And if that factor is removed from the mix, then the penalty of removal would not be a reasonable one because the potential for rehabilitation would be resurrected. But didn't you waive by failing to raise that? Well, I didn't waive it because the unnecessary display of a weapon charge permeates the entire claim against Mr. Rodriguez. And if that charge is dismissed, then the penalty of removal must be reassessed in the absence of such a claim because that looms so importantly in the penalty determination. That's why I don't believe it's waived. So, I thank you very much for your time. Thank you.